IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GIOVANNI BARRICELLI, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED CURRENT AND FORMER EMPLOYEES,<br><br>Plaintiffs,<br><br>v.<br><br>ST LOGISTICS, LLC, D/B/A SOLDIER DELIVERY, A WISCONSIN LIMITED LIABILITY COMPANY, AND TRAVIS SMITH, INDIVIDUALLY,<br><br>Defendant. | Case No. 3:19-cv-00136<br><br>Chief Judge Crenshaw |

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiff Giovanni Barricelli, for himself and on the behalf of all Opt-In Plaintiffs, and Defendant ST Logistics, LLC, (hereinafter "Soldier Delivery"), together with its successors and assigns, enter into this Settlement Agreement and Release and agree as follows:

### A. DEFINITIONS

1. <u>Action or Litigation or this Lawsuit</u> means this case, *Giovanni Barricelli, et al. v. ST Logistics, LLC, D/B/A Soldier Delivery, and Travis Smith, Individually*, Civil Action No. 3:19-cv-00136.

2. <u>Court</u> means the United States District Court for the Middle District of Tennessee, Nashville Division.

1

3. <u>Fair Labor Standards Act or FLSA</u> means the Fair Labor Standards Act, 29 U.S.C. §§ 201 – 219, as amended by the Portal-to-Portal Act, *id.* §§ 251 – 62 (FLSA).

4. <u>Defendant, Company, or Soldier Delivery</u> means ST Logistics, LLC.

5. <u>Defendants</u> means ST Logistics, LLC, and Travis Smith.

6. <u>Released Parties</u> means: (i) ST Logistics, LLC, and its former and present parents, subsidiaries, related companies, partnerships, joint ventures, or other affiliates (including but not limited to Amazon Logistics, Inc., Amazon.com, Inc., and Amazon.com Services LLC), any alleged joint employer of any Plaintiff or Opt-In Plaintiff; and (ii) with respect to each of these, their predecessors and successors; and (iii) with respect to each entity, all past and current officers, directors, employees, partners, shareholders, attorneys, assigns, and agents, and any other successors, assigns, or legal representatives; and (iv) Travis Smith, together with his heirs, estates, executors, administrators, assigns, transferees, and representatives.

7. <u>Named Plaintiff</u> means Giovanni Barricelli, together with his heirs, estates, executors, administrators, assigns, transferees, and representatives.

8. <u>Opt-in Plaintiffs</u> means the ten (10) individuals who are current or former Soldier Delivery employees and who, under 29 U.S.C. § 216(b), have

2

joined this action as party plaintiffs by signing and filing consent-to-join forms, together with their heirs, estates, executors, administrators, assigns, transferees, and representatives.

9. <u>Parties</u> means the Named Plaintiff, the Opt-in Plaintiffs, and Defendants.

10. <u>Plaintiffs' Counsel</u> means the law firms of Jackson, Shields, Yeiser, Holt, Owen & Bryant, and Ponce Law, and includes, but is not limited to, J. Russ Bryant, Gordon E. Jackson, Robert E. Turner, IV, Nathaniel A. Bishop, and Nina Parsley, who represent the Named Plaintiff and the Opt-in Plaintiffs.

11. <u>Released Claims</u> means (i) all wage and hour claims, known or unknown, that could be asserted under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. or any state law, as more fully defined in Section C(2), below, and (ii) with respect to the Named Plaintiff, all claims of any kind.

12. <u>Settlement Effective Date</u> means the first business day after the later of the following occurrences: (i) thirty (30) days after the Court issues an Order granting approval of the settlement and dismissing all claims with prejudice; or (ii) if an appeal of the Court's Order is timely filed, thirty (30) days after the date on which the Court's Order is finally affirmed by an appellate court or on which the appeal is otherwise dismissed with no possibility of subsequent appeal or other judicial review.

3

## B. BENEFITS

1. <u>Gross Settlement Payment</u>. Within thirty (30) days of the Settlement Effective Date, Soldier Delivery will pay the gross amount of $35,000.00 (thirty-five thousand and 00/100). At its discretion, Soldier Delivery may pay this amount earlier. This Gross Settlement Payment includes all wages, damages, penalties, liquidated damages, interest, and any other amounts payable or owed to the Named Plaintiff and Opt-in Plaintiffs and all attorneys' fees or costs.

2. <u>Consideration</u>. The Parties agree that the Gross Settlement Payment constitutes good, valid, and sufficient consideration for this Agreement.

3. <u>Apportionment of Settlement</u>. Using time and pay records provided by Defendants for settlement purposes, Plaintiffs' Counsel calculated the individual settlement payments that Named Plaintiff and each Opt-in Plaintiff will receive from the Gross Settlement Payment. According to Plaintiffs' Counsel's calculations, these amounts represent one hundred (100) percent of the Named Plaintiff and each Opt-in Plaintiff's alleged back wages and alleged liquidated damages.[1] Plaintiffs' Counsel presents this apportionment below:.

Giovanni Barricelli $1,960.00

Diana Peron $199.64

---

[1] Opt-In Plaintiffs Newman, Osborn and Perez were allocated $50.00 a piece although their damages as calculated by Plaintiffs' Counsel were less.

4

Dustin Jones $887.84

Kevin Newman $50.00

Presilla Alvardo $ 245.34

Savanna Osborn $50.00

Sherri Russell $128.86

Tyler Kimery $1,761.98

Alberto Zangano $1,378.84

Carolyn Shultz $487.50

Angel Perez $50.00

    4.    Taxes. The Parties recognize that the individual settlement payments include sums for back wages, liquidated damages, penalties, and interest. Soldier Delivery will issue two (2) checks for Named Plaintiff and each Opt-in Plaintiff. The Parties agree that one of the two checks will consist of fifty percent (50%) of the payment to Named Plaintiff and each Opt-in Plaintiff which will be deemed alleged back wages and will be subject to W-2 reporting. Therefore, normal payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state-specific statutory deductions) and withholdings (garnishments, tax liens, child support, etc.) will be deducted from this portion of each individual settlement payment. The Parties agree that the second check will consist of the remaining fifty percent (50%) and will be deemed alleged liquidated

damages. For this second payment, when appropriate, Soldier Deliver will issue to each individual an IRS Form 1099 for that portion of their payments. The Named Plaintiff and Opt-in Plaintiffs will be responsible for correctly characterizing this compensation for tax purposes and for paying any taxes owing on these amounts. Funds from any uncashed checks at the end of the applicable statute of limitations period for contracts under Tennessee law shall be retained by Soldier Delivery.

5. <u>Service Payments to Named Plaintiff</u>. In addition to receiving his respective portion of the Gross Settlement Payment representing alleged back wages and alleged liquidated damages, Giovanni Barricelli shall receive $5,000 from the Gross Settlement Payment, as consideration for the release contained in Section C(3) and promises in Section E(3) and E(4) herein and for his time, expense, and service in this action, including his responding to written discovery, being deposed, and participating in conferences and meetings with Plaintiffs' Counsel.

6. <u>Taxes on Service Payment to Named Plaintiff</u>. The Parties agree that the service payment to the Named Plaintiff is not wages. Therefore, the Named Plaintiff will receive a third check consisting of this service payment and, when appropriate, an IRS Form 1099 for this service payment will be issued. The Named Plaintiff will be responsible for correctly characterizing this compensation for tax purposes and for paying any taxes owing on this amount.

6

7. <u>Employer's Payroll Taxes</u>. In addition to the Gross Settlement Payment, Soldier Delivery will pay the employer's share of all applicable payroll taxes on amounts paid to the Named Plaintiff and Opt-in Plaintiffs as wages.

8. <u>Attorneys' Fees and Costs</u>. Of the $35,000.00 Settlement Amount, $15,050.00 will be allocated as attorneys' fees, and $7,750.00 as reimbursement of litigation costs and expenses to Plaintiffs' Counsel. To the extent the FLSA requires Court approval of the amount of attorneys' fees and litigation costs and expenses in an FLSA settlement, these attorneys' fees and litigation costs and expenses will be subject to Court approval. Defendants will not oppose Plaintiffs' Counsel's application, if necessary, to the Court for approval of attorneys' fees and litigation costs in the amounts set forth in this Section B(8). Plaintiffs' Counsel will not seek fees and costs in excess of these amounts. The amount approved by the Court, not to exceed these amounts out of the Gross Settlement Payment, will be paid within thirty (30) days of the Settlement Effective Date.

9. <u>Collective Action Certification</u>. The Parties agree that Defendants' stipulation to conditional certification in this Lawsuit and to the settlement of the Named Plaintiff's and Opt-in Plaintiffs' claims on a collective basis is in no way an admission by Defendants that the Named Plaintiff or Opt-in Plaintiffs are similarly situated to one another under § 216(b) of the FLSA, that jurisdiction

7

Case 3:19-cv-00136   Document 68-1   Filed 12/29/20   Page 7 of 18 PageID #: 341

exists over Defendant Travis Smith or over claims of any out-of-state employees of Defendants or that certification of any kind is proper.

### C. RELEASE OF CLAIMS

1. <u>Power to Bind Opt-In Plaintiffs</u>. Each Opt-in Plaintiff has designated the Named Plaintiff as the Opt-in Plaintiffs' agent to make decisions on the Opt-in Plaintiffs' behalves, including, but not limited to, matters pertaining to settlement. Named Plaintiff represents that he has the authority to settle this Lawsuit on behalf of himself and all Opt-in Plaintiffs.

2. <u>Release of Wage and Hour Claims</u>. Named Plaintiff and each Opt-in Plaintiff, hereby voluntarily agrees to forever release Defendants and Released Parties from liability for any claims under state or federal statutes or common law regarding the payment of wages to them for work performed while employed (or allegedly employed) by Defendants, including claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and any in similar state law. By way of example, and not exclusion, this release, includes within its scope claims of failure to pay for all hours worked, claims for unpaid wages, minimum wages or overtime pay, and claims based on the alleged miscalculation of overtime premiums, including claims for penalties or interest for failure to do so and whether postured as claims of a statute or a common law duty, and whether postured as an individual claim or a private attorney general or purported *qui tam* theory; alleged inaccurate

8

wage statements as a result of failure to pay for all time worked; or failure to maintain records of hours worked, provided that this release of wage and hour claims does not include, for example, employment discrimination claims. The Named Plaintiff and Opt-in Plaintiffs understand that the Settlement Agreement fully and finally resolves wage and hour claims that were brought or could have been brought in this Lawsuit. The Named Plaintiff and Opt-in Plaintiffs further represent and warrant that they have not directly or indirectly assigned, transferred, or purported to assign or transfer any portion of any liability, claim, demand, or cause of action that they herein release. The Named Plaintiff and Opt-in Plaintiffs understand that, if the Court does not approve this Settlement Agreement and the Parties are unable to negotiate a new agreement, this agreement has no effect and they will not be entitled to any portion of the Gross Settlement Payment.

3. <u>Releases of All Other Claims by Named Plaintiff</u>. In exchange for the benefits provided to the Named Plaintiff under this agreement in Paragraph B(5), Named Plaintiff hereby voluntarily agrees to forever release Defendants and Released Parties from any and all claims, causes of actions, demands, debts, obligations, damages or liability, whether or not asserted in this Lawsuit, including, but not limited to, claims of discrimination, wrongful discharge, breach of contract, infliction of emotional distress, or negligence, whether arising under statute or common law.

9

## D. SETTLEMENT ADMINISTRATION

1. <u>Duty of Cooperation</u>. The Parties agree to cooperate in obtaining expeditious final approval of this Settlement.

2. <u>Motion for Settlement Approval</u>. Plaintiffs shall file an Unopposed Motion for Settlement Approval and a Proposed Order Approving Settlement with the Court within ten business days after this Agreement is fully executed, which will include a Proposed Order granting approval of the Settlement, adjudging the terms to be fair, reasonable, and adequate, directing consummation of its terms and provisions, and dismissing the Action on the merits, with prejudice, in accordance with the terms of this Agreement. Before filing this motion, Plaintiffs' Counsel will provide Defendants with a draft of the motion for review and revision. The motion shall not be filed until the Parties agree on its content. The Proposed Order will declare that any Named Plaintiff and Opt-in Plaintiff who participates in the Settlement are bound by this Settlement Agreement and its releases. The Court will reserve jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' settlement.

3. <u>Information for Settlement Distribution</u>. Plaintiffs' Counsel will provide to Defendants a report listing the amount of all payments to be made to Named Plaintiff and each Opt-in Plaintiff when it provides Defendants with an advance draft of the Unopposed Motion for Settlement Approval.

10

4. <u>Diligence in Finding Named Plaintiff and Opt-in Plaintiffs</u>. Plaintiffs' Counsel will use standard devices, including ACCURINT, the National Change-of-Address database or their equivalent, to obtain forwarding addresses for mailing individual settlement payments to the Named Plaintiff and Opt-in Plaintiffs, and will provide any information received to Soldier Delivery for use in administering the settlement and for tax reporting purposes.

5. <u>Distributing Settlement Payment</u>. Subject to the terms of this Agreement, within thirty (30) days of the Settlement Effective Date, Soldier Delivery will mail all settlement checks payable as part of the Gross Settlement Payment to Plaintiffs' Counsel.

6. <u>Inquiries or Communications from Named Plaintiff and Opt-in Plaintiffs</u>. Named Plaintiff and Opt-in Plaintiffs agree not to publicize or discuss this settlement or any settlement payments with anyone other than their spouse or tax advisor. If any Plaintiff is asked about the status of this Lawsuit or its resolution, that Plaintiff may say only that the matter has been resolved.

7. <u>Altering Dates</u>. Upon written agreement or with Court approval, the Parties may alter the above dates or time periods.

8. <u>Right to Rescind Settlement</u>. If the Court fails to approve this Settlement Agreement in its entirety and as submitted by the Parties to the Court, then, at its option, Soldier Delivery may rescind this Agreement. If Soldier Delivery

11

rescinds, then: (i) its obligations under this Agreement will cease to have any force and effect; (ii) the Agreement will be vacated, rescinded, canceled, and annulled; (iii) the Parties will return to the status quo ante as if they had not entered into this Agreement; (iv) the settlement and all negotiations and proceedings related to the settlement are without prejudice to the Parties' rights; and (v) all evidence of the settlement, negotiations, and proceedings will be inadmissible and will not be discoverable. Soldier Delivery may exercise its right to rescind the settlement by filing a Notice of Rescinding Settlement with the Court.

### E. PROMISES

1. <u>No Admission</u>. Nothing contained in this Agreement or in any other document related to the settlement will be construed as or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants. Each of the Parties has entered into this settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses. Parties further acknowledge and agree that this Agreement shall not be used to suggest an admission of liability in any dispute the Parties may have now or in the future with respect to any person or entity. Further, neither this Agreement nor any part of the negotiations in connection with this Agreement shall constitute evidence with respect to any issue or dispute, other than for purposes of enforcing this Agreement.

2. <u>Waiver of Appeals</u>. The Parties agree to waive all appeals.

12

3. <u>Mutual Disparagement.</u> In exchange for the consideration exchanged by the Parties under this agreement in Paragraphs B(5) and C(3), the Partieshereby agree that they shall not at any time engage in any form of conduct, nor make any statements or representations, that disparage or otherwise impair the reputation, goodwill or interests of the other.

4. <u>No Future Employment By Named Plaintiff.</u> Named Plaintiff agrees and recognizes that his employment relationship with Defendants has been permanently and irrevocably severed. Named Plaintiff hereby agrees that he will not seek or accept re-employment with Soldier Delivery in the future, and if he should do so in violation of this provision, acknowledges that this Agreement and his promise not to seek or accept employment shall constitute good, just and proper cause to refuse his employment or, if hired, to terminate his employment.

F. **MISCELLANEOUS**

1. <u>Authority.</u> The signatories represent that they are fully authorized to enter into this Agreement and bind the parties to these terms and conditions.

2. <u>Entire Agreement.</u> This Agreement contains the entire agreement between the Parties relating to the settlement and to this Agreement, and all prior or contemporaneous agreements, understandings, representations, or

statements, whether oral or written and whether by a Party or a Party's counsel, are merged into this Agreement.

3. <u>Mutual Full Cooperation</u>. The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties to this Agreement will use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary or ordered by the Court, or otherwise, to effectuate this Agreement and the terms set forth in it. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel will, with the assistance and cooperation of Defendants and Defendants' counsel, take all necessary steps to secure the Court's approval of the Parties' settlement.

4. <u>Notices</u>. Unless otherwise specifically provided in this Agreement, all notices, demands or other communications given will be in writing and will be deemed to have been duly given as of the third business day after mailing by U.S. registered or certified mail, return receipt requested, addressed as follows:

<u>To the Named Plaintiff and Opt-in Plaintiffs</u>:

**J. Russ Bryant**
**Jackson, Shields, Yeiser, Holt, Owen**
**& Bryant**
**262 German Oaks Drive**
**Memphis, Tennessee 38018**

14

To the Defendants:

**Wendy V. Miller
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
401 Commerce Street, Suite 1200
Nashville, TN 37219**

5. <u>Construction</u>. The Parties agree that the terms and conditions of this Agreement are the result of lengthy, arms-length negotiations between the parties and that this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not construed in favor of or against any party by reason of the extent to which any Party or the Party's counsel participated in the drafting of this Agreement.

6. <u>Construction of Captions and Interpretations</u>. Paragraph titles or captions in this Agreement are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or any provision in it. Each term of this Agreement is contractual and is not merely a recital, except for those defined in Section A.

7. <u>No Modification and Waiver</u>. This Agreement may not be changed, altered, or modified except in writing and signed by the parties and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties. The

15

waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach.

8. <u>Binding on Assigns</u>. This Agreement, and all obligations imposed by it, will be binding upon and all benefits of the Agreement will inure to the benefit of, the Parties and their respective spouses, children, offspring, heirs, trustees, executors, administrators, successors, and assigns.

9. <u>Named Plaintiff Signatory</u>. It is agreed that it would be impractical to have each Opt-in Plaintiff execute this Agreement. Plaintiffs' Counsel will advise each Opt-in Plaintiff of the binding nature of the Release, and this will have the same force and effect as if this Agreement were executed by each Opt-in Plaintiff.

10. <u>Counterparts</u>. This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Agreement, which will be binding upon and effective as to all parties, subject to Court approval. A facsimile or scanned copy of a signature of a Party to this Agreement shall be as acceptable as an original.

11. <u>Governing Law</u>. Except to the extent governed by federal law, this Agreement will be governed by the statutes and common law of Tennessee, excluding any that mandate the use of another jurisdiction's laws.

Executed this  29  day of December 2020.

*Brendee Kubesh*
On behalf of ST Logistics, LLC

*Brenda Kubesh*
Print Name

17

Executed this 18th day of December 2020.

_____
Individually and on behalf of all Opt-in Plaintiffs

Giovanni Barricelli
_____
Print Name (Giovanni Barricelli)

45350960.1

18